E-FILED
Tuesday, 14 October, 2025 08:45:53 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **DAVID HERBERGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-2045** |
| | ) | |
| **VILLAGE OF BOURBONNAIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

Plaintiff, David Herberger, filed a Complaint (#2) on December 5, 2024, in which he raised claims that Defendant, the Village of Bourbonnais, Illinois, terminated his employment in violation of the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) ("ADA") and the Family and Medical Leave Act (29 U.S.C. § 2601 et seq.) ("FMLA"). He also brings an Illinois common law claim for retaliatory discharge. Presently before the court is Defendant's Motion to Dismiss (#18), filed on March 13, 2025. Plaintiff filed a Response (#23) on April 25, 2025, and Defendant filed a Reply (#26) on May 8, 2025. For the reasons set forth below, Defendant's Motion to Dismiss (#18) is GRANTED in part and DENIED in part.

**BACKGROUND**

The following background facts are taken from the allegations in Plaintiff's Complaint. In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Plaintiff began working for Defendant on February 12, 2018, when he was hired as the Assistant Director of Public Works. His duties in that role "were mostly administrative and supervisory." Plaintiff is an amputee and has diabetes. Those conditions notwithstanding, Plaintiff consistently performed the essential functions of his job with or without reasonable accommodation.

In June 2023, Plaintiff required medical leave "for complications necessitating knee surgeries and therapy." Defendant approved Plaintiff's leave under the FMLA, to run from June 28 through December 7, 2023. Between June 28 and October 24, 2023, Plaintiff underwent surgery and rehabilitation. He was discharged from the Mayo Clinic on October 24, 2023.

On October 31, 2023, Plaintiff and his wife, Cheryl, visited Defendant's administration building, in part to update certain village officials on Plaintiff's recovery and his plans to continue his rehabilitation in Florida. During that visit, Cheryl spoke with Defendant's Human Resources Director Sue Pranskus about extending Plaintiff's FMLA leave. On November 3, Plaintiff formally requested an extension of his FMLA

leave in an email to Pranskus. Therein, he cited an upcoming knee surgery scheduled for December 19, 2023, which would require six to eight weeks of rehabilitation.

Pranskus responded to Plaintiff's email on November 9, 2023, stating that she was too busy to address the request. One week later, Plaintiff received a letter from Defendant requesting additional information from his surgeon. Plaintiff submitted his surgeon's response via email on November 21, 2023. Plaintiff's surgeon, Dr. Bedard at the Mayo Clinic, submitted an additional letter in response to Defendant's original inquiry. Plaintiff followed up with Pranskus via email on December 4; she stated in response that she hoped to provide an answer soon.

Plaintiff received another letter from Defendant on December 7, 2023. The letter again requested information from Plaintiff's surgeon, with many of the inquiries overlapping with those already made in Defendant's November letter. Dr. Bedard would respond to that letter on December 12, 2023.

Meanwhile, also on December 7, Plaintiff underwent total knee replacement surgery.[1] He was discharged the next day.

On December 18, 2023, Defendant's Village Board passed an ordinance regarding paid leave benefits for Village employees. Plaintiff alleges upon information and belief that the ordinance was "more friendly to the Village and less friendly to Village

[1] The Complaint does not clarify whether the December 7 surgery was the same surgery that was originally scheduled for December 19, or explain why or when the surgery was rescheduled.

employees—likely in Response to Plaintiff's medical leave." Plaintiff refers to this ordinance elsewhere in his Complaint as Defendant's "new FMLA policy."

The next day, Plaintiff received a phone call from Mayor Paul Schore, inviting him to meet in the mayor's office the following afternoon so that they could discuss his requested extension. Plaintiff agreed to the meeting.

On December 20, 2023, Plaintiff attended a meeting with the Village Attorney and Pranskus; Schore was not present. The Village Attorney read a separation of employment letter and informed Plaintiff that he "would be terminated because he could not return to work until January 28, 2024, according to his doctor's letter." Plaintiff requested "light-duty work." He alleges that "opportunities for light-duty work existed" and that he "could have performed his duties as of December 20, 2023." Plaintiff's request for light duty was denied.

**ANALYSIS**

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In ruling upon a motion to dismiss, the court must draw all reasonable inferences in favor of the plaintiff but need not accept as true any legal assertions, threadbare recitals of the elements of a cause of action, or conclusory statements. See *Iqbal*, 556 U.S. at 678.

Plaintiff's Claims

In Count I of the Complaint, Plaintiff asserts that Defendant violated the ADA when it failed to accommodate his disability by declining his request for light duty and otherwise failing to engage in any interactive process. He also asserts that Defendant "terminated Plaintiff based on his disability," thus setting forth a straightforward claim of disparate treatment under the ADA.

In Count II of the Complaint, Plaintiff contends that Defendant interfered with his rights under the FMLA when it failed to restore him to his previous position upon the expiration of his leave and when it delayed and failed to approve a reasonable request for an extension of his leave. He also alleges that Defendant terminated him in retaliation for exercising his rights under the FMLA.

Finally, in Count III of the Complaint, Plaintiff asserts that his discharge in retaliation for exercising his rights under the FMLA amounts to an actionable retaliatory discharge under Illinois common law.

The ADA

Title I of the ADA provides that no qualifying employer may "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination against a qualified individual on the basis of disability is defined to include a failure to make "reasonable accommodations

to the known physical or mental limitations of an otherwise qualified individual with a disability[.]" 42 U.S.C. § 12112(b)(5)(A).

It is often said that "[u]nder the ADA, two distinct categories of disability discrimination claims exist: failure to accommodate and disparate treatment." *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032 (7th Cir. 1999); *Gross v. Peoples Gas Light & Coke Co.*, 634 F. Supp. 3d 464, 489 (N.D. Ill. 2022) (stating the same). To prevail on a disparate treatment claim, a plaintiff must establish that: (1) he was a qualified person with a disability; (2) he was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; (3) he suffered an adverse employment action, including the denial of a reasonable accommodation; and (4) the adverse action was caused by his disability. *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022)).

"An adverse employment action is not needed to prevail on a failure to accommodate theory." *Bruno v. Wells-Armstrong*, 93 F.4th 1049, 1054 (7th Cir. 2024). Thus, to establish a claim for failure to accommodate, a plaintiff must simply show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability.[2] *Schoper v. Bd. of Trs. of W. Illinois Univ.*, 119 F.4th 527, 532 (7th Cir. 2024).

---

[2] "Relevant to—and sometimes determinative of—the third element is the employer and employee's respective cooperation in an interactive process to determine a reasonable accommodation." *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 503 (7th Cir. 2020) (cleaned up); see 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."). In this case, Plaintiff has alleged that there was no interactive process, because Defendant simply terminated him.

*The Parties' Arguments*

Defendant argues that Plaintiff's ADA claims must be dismissed because the Complaint fails to identify Plaintiff's qualifying disability with any level of specificity. While Defendant does not dispute that Plaintiff's status as an amputee and a diabetic would qualify him as disabled, it points out that the Complaint does not suggest those conditions had anything to do with what happened to Plaintiff. Rather, Defendant argues, Plaintiff has alleged that he experienced an unspecified "serious health condition" that that prompted the need for an accommodation and allegedly prompted Defendant to take adverse action against him.

Plaintiff insists that Defendant's argument is without merit, emphasizing that he "expressly alleges that he is both an amputee and diabetic—both of which constitute disabilities recognized under the ADA." Plaintiff maintains that his allegations of these conditions satisfies notice pleading standards.

*Sufficiency of Plaintiff's Allegations*

"[A] plaintiff advancing a claim under the ADA must allege that he is disabled but, with or without reasonable accommodation, can still do the job. Normally he also must allege what *exactly makes him disabled*." *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019) (emphasis added) (citing *Tate v. SCR Medical Transportation*, 809 F.3d 343, 345 (7th Cir. 2015)). A plaintiff must also allege that there is a causal connection between his disability and whatever adverse employment action he suffered. *Gallardo v. Chicago Transit Auth.*, 2016 WL 7049055, at *2 (N.D. Ill. Dec. 5, 2016) (citing *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601

(7th Cir. 2011)). And in the failure-to-accommodate context, where no adverse employment action is required, a plaintiff must nonetheless allege a causal nexus between his disability and the limitation for which he seeks an accommodation. *Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1042 (7th Cir. 2020).

Plaintiff has failed to adequately plead one of these elements. Defendant presumes that Plaintiff's disability is whatever "complications" led to his multiple surgeries. The presumption is understandable, given that whatever medical issues Plaintiff suffered—beginning in June 2023 and culminating with a total knee replacement surgery in December of that year—form the core allegations of his Complaint. While the Complaint suggests a causal connection between those issues and Plaintiff's termination and request for accommodation, it lacks any sort of detail describing precisely what rendered Plaintiff disabled.

Technically, Plaintiff does not dispute that conclusion. Rather, he argues that his only disabilities are his diabetes and his amputation, and that he clearly pleaded them. He now contends the complications that gave rise to the need for multiple surgeries were "associated with his disability."

The problem is that Plaintiff has wholly failed to allege that his diabetes or amputation played any role in the events leading up to December 20, 2023. According to his own Complaint, Plaintiff appeared to be getting along just fine in his role as Assistant Director of Public Works from his February 2018 hiring through June 2023. Then, in June 2023, Plaintiff "required medical leave for complications necessitating knee surgeries and therapy." The Complaint does not state—explicitly or implicitly—

that those "complications" had anything to do with diabetes or his amputation.[3] Likewise, while Plaintiff had another knee surgery in December 2023—this time a total knee replacement—it is simply unknown whether that surgery, like those prior, had anything to do with Plaintiff's disabling conditions. Plaintiff makes no actual allegations to that end, and there is nothing in his truncated description of what happened between June and December 2023 that would allow an inference to reasonably be drawn connecting those events to his diabetes or amputation. Nor, for that matter, is there any sort of self-evident connection between a total knee replacement surgery and diabetes or amputation.

In short, Plaintiff has simply failed to plead factual content that would plausibly suggest that (1) his December 20, 2023, termination had anything to do with his diabetes or amputation; or (2) his accommodation request, made that same day, was related to his diabetes or amputation. Plaintiff has alleged a disability (or disabilities), and he has alleged an adverse employment action and a failure to accommodate. But between the two he has left a six-month long causal gap, and has made no attempt to fill it. It follows that he has failed to plausibly allege an ADA violation.[4]

---

[3] Plaintiff writes in his Response: "Plaintiff also details that the FMLA leave was necessitated by leg complications *associated with his disability*." (Emphasis added). Not so. The Complaint hints at no such association.

[4] The court would note that Defendant takes exception to a number of other issues with Plaintiff's Complaint as well. For instance, Dr. Bedard's December 12, 2023, letter—apparently stating Plaintiff could not return to work until January 28, 2024—and Plaintiff's own request for an FMLA leave extension suggests that Plaintiff could *not* work after his December surgery. This would conflict with Plaintiff's present allegation that he could have worked on December 20, 2023. Relatedly, according to the

Accordingly, Defendant's Motion to Dismiss (#18) is GRANTED with respect to Count I of Plaintiff's Complaint, and the ADA discrimination and failure-to-accommodate claims contained therein.

The FMLA

The FMLA entitles an eligible employee to 12 weeks of unpaid leave required as a result of, as relevant here, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any rights arising under the FMLA. 29 U.S.C. § 2615(a)(1). It is likewise "unlawful for an employer 'to discharge or in any manner discriminate against' any employee for opposing any practice the FMLA makes unlawful." *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010) (quoting 29 U.S.C. § 2615(a)(2)).

To prevail on an FMLA interference claim an employee must establish that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 498 (7th Cir. 2014).

---

Complaint, Plaintiff did not even request an accommodation until after he was terminated. See *Emmanouil v. W. Aurora Sch. Dist. 129*, 2024 WL 4367791, at *6 (N.D. Ill. Sept. 30, 2024) (opining that ADA claim would fail if the plaintiff "had requested her accommodation after or during her termination"). The court need not address these issues here, because Plaintiff's Complaint was insufficient with respect to causation. The court brings them up only so that Plaintiff may be aware of them in the event he should file an amended complaint.

"To prevail on an FMLA retaliation claim, a plaintiff must show that (1) he engaged in FMLA-protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the two." *Juday v. FCA US LLC*, 57 F.4th 591, 596 (7th Cir. 2023). The difference between a retaliation and an interference theory is that the former requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the FMLA. *Goelzer*, 604 F.3d at 995.

*The Parties' Arguments*

Defendant argues that Plaintiff cannot state a claim for FMLA interference because he received all of the benefits under FMLA to which he was entitled. In fact, Plaintiff received much more leave time than that to which he was entitled, as he makes clear in his Complaint that Defendant approved FMLA leave from June 28 through December 7, 2023. Defendant maintains that it was under no legal obligation to extend Plaintiff's leave.

In its Motion, Defendant makes no reference to Plaintiff's FMLA retaliation claim. In its Reply, it asserts that because Plaintiff was unable to perform the essential functions of his job when his FMLA leave expired on December 7, he has no right to reinstatement. It argues that an FMLA retaliation claim "must include an allegation that Plaintiff was able to perform the essential functions of his prior job ***at the time of firing***." (Emphasis in original).

Plaintiff insists the Defendant's claim that its obligations under FMLA ended after 12 weeks "ignores Plaintiff's key allegations: that he timely requested an extension, supported by medical documentation, and was terminated before a final decision was rendered." He argues that FMLA interference can occur where an employer obstructs the exercise of FMLA rights through delay. Finally, Plaintiff contends: "Defendant's assertion that it had no further obligations once 12 weeks expired disregards the doctrine of equitable estoppel[[5]] and ignores Plaintiff's plausible claim that his termination was pretextual and retaliatory."

*Sufficiency of Plaintiff's Allegations*

As stated above, "[t]he FMLA entitles any eligible employee suffering from a serious health condition that renders him unable to perform the functions of his position to twelve workweeks of leave during each twelve-month period." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (citing 29 U.S.C. § 2612(a)(1)(D)). The FMLA also provides that any eligible employee who takes leave pursuant to § 2612 is entitled, upon return from such leave, to be restored to their former position or an equivalent position. 29 U.S.C. § 2614(a)(1).

"An employer is not required to give an employee more than twelve weeks of leave; in other words, '[a]n employer has no responsibility to restore a person's job if that twelve week period is exceeded.'" *Jones v. Maywood, Melrose Park, Broadview Sch.*

[5] Though Plaintiff accuses Defendant of "disregard[ing] equitable estoppel," he disregards it to the same extent. Because Plaintiff fails to expound on how that doctrine bears upon on his case, the court will not address it.

*Dist. 89*, 2018 WL 4216616, at *10 (N.D. Ill. Sept. 5, 2018) (quoting *Palao v. Fel-Pro, Inc.*, 117 F. Supp. 2d 764, 769 (N.D. Ill. 2000)); see also *Cloutier v. GoJet Airlines, LLC*, 311 F. Supp. 3d 928, 948 (N.D. Ill. 2018) ("[T]he FMLA does not require an employer to reinstate an employee to his former position if that employee is unable to return to work after twelve weeks of FMLA leave."). Even where an employer provides additional leave, above and beyond that statutorily required 12 weeks, such a courtesy "has no bearing on the established parameters of taking leave pursuant to the FMLA." *Breneisen v. Motorola, Inc.*, 656 F.3d 701, 705 (7th Cir. 2011).

Plaintiff's FMLA interference claim fails because he has not plausibly alleged that Defendant "denied him FMLA benefits to which he was entitled." See *Taylor-Novotny*, 772 F.3d at 498. Plaintiff was approved for FMLA leave from June 28, 2023, through December 7, 2023. Plaintiff's FMLA-mandated 60 working days of leave was well exhausted within than 162-day span; indeed, it is clear that Defendant provided Plaintiff with extra leave beyond that which was required. So while Plaintiff was certainly free to request an extension of that courtesy, he was simply not entitled to any more leave time under the FMLA, such that Defendant's denial of that request (or its delay in denying the request) cannot be considered FMLA interference.

Nor can Plaintiff's termination be construed as interference with the FMLA-provided right to reinstatement. "The FMLA does not require an employer to reinstate an employee to his former position if that employee is unable to return to work after twelve weeks of FMLA leave." *Cloutier*, 311 F. Supp. 3d at 948. In this case, Plaintiff had total knee replacement surgery the day his FMLA leave expired. Indeed, the very fact

that he requested an extension of his FMLA leave to accommodate that surgery suggests that he was unable to return to work, given that the inability to perform the functions of one's job is a requirement to receive such leave. 29 U.S.C. § 2612(a)(1)(D).

The court notes that, in the FMLA section of his Response, Plaintiff argues: "Importantly, Plaintiff alleges that [Defendant] delayed and obstructed the accommodation process, then terminated him shortly after his surgery without allowing return to light-duty work—even though he was medically cleared to do so." These references to the accommodation process, light-duty work, and medical clearance to work suggest that this is a misplaced ADA argument. To that point, Defendant argues at some length in its Motion about the inherently contradictory nature of Plaintiff's ADA and FMLA claims—the former requiring the ability to do the job (with or without accommodation), and the latter necessarily requiring the *in*ability to work. See *Cullotta v. United Surgical Partners Int'l, Inc.*, 2021 WL 3367193, at *3 (N.D. Ill. Aug. 3, 2021) (noting that "an FMLA request must, by definition, contain an admission that the requestor is incapable of performing essential functions of the position" and discussing circuit split concerning mutual exclusivity of ADA and FMLA claims). The court need not address the precise intersection of those claims here, however, as Plaintiff does not even allege that he was able to return to work on December 7, 2023, when his FMLA leave expired.

The fact that Defendant's termination of Plaintiff did not interfere with any rights held by Plaintiff under the FMLA is not, however, dispositive of Plaintiff's FMLA retaliation claim. Defendant's argument with respect to that claim is minimal, and

relegated to its Reply. That argument seems to be that Defendant could not have acted in retaliatory fashion because Plaintiff was unable to perform the essential functions of his job at the time of his termination.

But a retaliation claim does not turn on whether Defendant was within its rights under the FMLA in terminating Plaintiff; rather, the inquiry is into Defendant's actual motivations in doing so. To succeed on a retaliation claim, Plaintiff does not even need to prove that retaliation was the *only* reason for his termination; he "may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Goelzer*, 604 F.3d at 995 (cleaned up). Thus, while Defendant would—at least presumably—argue that Plaintiff was terminated because he had been gone for five months and still could not return to work, Plaintiff has alleged that he was terminated in retaliation for engaging in protected conduct, i.e., taking FMLA leave. Moreover, he has alleged that he was "terminated under pretextual circumstances," suggesting that while he was ostensibly terminated because he could not return to work, the *real* reason for his termination was retaliation for having taken FMLA. The court notes that "the general rule that it is inappropriate to make determinations regarding pretext at the pleading stage[.]" *Hoglund v. Signature Mgmt. Grp., Inc.*, 2009 WL 1269258, at *2 (N.D. Ill. May 4, 2009).

The questions of Defendant's actual motivation(s) in terminating Plaintiff, or Plaintiff's allegations thereof, are simply not addressed by Defendant—either in its Motion or its Reply.[6] "It is the defendant's burden to establish the complaint's insufficiency," *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020), and Defendant has not met that burden here. Accordingly, Defendant's Motion to Dismiss will be granted with respect to Plaintiff's FMLA interference claim, but must be denied with respect to Plaintiff's FMLA retaliation claim.

Illinois Common Law Retaliatory Discharge

Plaintiff alleges that Defendant's act of terminating him in retaliation for utilizing FMLA leave runs contrary to Illinois' clearly mandated public policy of protecting employees' FMLA rights, and thus constitutes retaliatory discharge under Illinois common law.

"Illinois has recognized the limited and narrow tort of retaliatory discharge as an exception to the general rule of at-will employment." *Sullivan v. Progressive Cas. Ins. Co.*, 2004 WL 1687123, at *3 (N.D. Ill. July 27, 2004) (citing *Balla v. Gambro, Inc.*, 584 N.E.2d 104, 107 (Ill. 1991)). "In order to establish a cause of action for retaliatory discharge, the plaintiff must show that: (1) she was discharged in retaliation for her activities; and (2) the discharge is a violation of a clearly mandated public policy." *Id*. The Illinois Supreme Court "has consistently sought to restrict the common law tort of retaliatory discharge." *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1121 (Ill. 1999)

---

[6] Defendant's claim that Plaintiff's inability to work is dispositive of his FMLA retaliation claim is unsupported by any legal citation.

(collecting cases). "[F]or retaliatory discharge to reach the level of a violation of public policy, the matter must strike at the heart of a citizen's social rights, duties, and responsibilities." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 377 (Ill. 2009) (cleaned up).

Defendant asserts that a claim for retaliatory discharge may not be based on FMLA rights. For this proposition it relies on *Handel v. Belvedere USA Corp.*, 2001 WL 1286842, at *2 (N.D. Ill. Oct. 22, 2001), in which the plaintiff alleged that he was terminated in retaliation for, inter alia, his "efforts to protect his subordinates in the exercise of their rights under the FMLA." The *Handel* court observed that no Illinois Supreme Court decision had addressed whether FMLA retaliation would support a state law retaliatory discharge claim, but also found that every court to consider the question within the Seventh Circuit had found that it would not. *Id.* (citing *Hamros v. Bethany Homes & Methodist Hosp. of Chicago*, 894 F. Supp. 1176, 1178 (N.D. Ill. 1995); *Dormeyer v. Comerica Bank – Ill.*, 1998 WL 729591, at *5-6 (N.D. Ill. Oct. 14, 1998), aff'd, 223 F.3d 579 (7th Cir. 2000); *Callozzo v. Office Depot, Inc.*, 1998 WL 111628, at *4-5 (N.D. Ill. Mar. 6, 1998)).

Noting that "[b]ecause the tort of retaliatory discharge is considered to be an erosion of the at-will doctrine, courts narrowly construe the tort," the *Handel* court ultimately joined with the others in concluding:

> [U]nder Illinois law, a plaintiff cannot assert a state law retaliatory discharge claim based on the rights set forth in the FMLA. The FMLA does not involve those matters that strike at the heart of a citizen's social rights, duties, and responsibilities. Rather, the FMLA was designed to balance the employer's legitimate interests with the needs of employees in obtaining leave for certain medical conditions and family reasons and, therefore, affects only the private relationship between an employee and employer.

*Id*. at *4 (internal citations omitted); see also *Sullivan*, 2004 WL 1687123, at *6 ("It is improbable that the Illinois Supreme Court would permit a claim for retaliatory discharge based on rights set forth through the FMLA under the circumstances of this case. While the Illinois Supreme Court has already expanded the retaliatory discharge tort to two categories, whistle-blowing and worker's compensation claims, those torts protect citizens from criminal activity or serious hazards. The FMLA, on the other hand, protects private interests by balancing the needs of employers and employees.").

In Response, Plaintiff fails to cite a single case in which a court, be it federal or state, has allowed an Illinois retaliatory discharge claim to proceed on an FMLA retaliation theory. And while 24 years have elapsed since *Handel* was decided, the proposition for which it stands is only more firmly ensconced in the law. See, e.g., *Mahran v. Cnty. of Cook*, 2023 WL 8004280, at *7 (N.D. Ill. Nov. 17, 2023) ("FMLA claims only affect the private relationship between an employee and employer, and thus cannot form the basis for a retaliatory discharge claim." (cleaned up)); *Rowe v. U.S. Bancorp*, 2012 WL 733859, at *6 (C.D. Ill. Mar. 6, 2012) ("This Court agrees with the conclusion of other district courts in Illinois that the FMLA does not involve matters that strike the heart of a citizen's social rights, duties, and responsibilities.").

Plaintiff has made no argument as to why this court should depart from settled law, nor can the court discern any such reason. Accordingly, the court find that Plaintiff's FMLA retaliation claim does not implicate a matter of public policy, such that

Defendant's Motion to Dismiss must be granted with respect to Plaintiff's Illinois retaliatory discharge claim.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Dismiss (#18) is GRANTED in part and DENIED in part as described herein.

(2) This matter is referred back to the Magistrate Judge for further proceedings consistent with this Order.

ENTERED this 14th day of October, 2025.

s/Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE